# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PERRY R. SILVERMAN,**

        **Petitioner,**

    v.

**ALAN LAZAROFF, Warden,**

        **Respondent.**

CASE NO. 2:07-cv-01233
**JUDGE SMITH**
**MAGISTRATE JUDGE ABEL**

## **OPINION AND ORDER**

On June 12, 2009, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be dismissed. Petitioner has filed objections to the Magistrate Judge's *Report and Recommendation*.

Petitioner Perry Silverman was a lawyer who was convicted after trial in the Court of Common Pleas for Franklin County, Ohio of theft from his clients, tampering with evidence, falsification in connection with a theft offense, forgery, and engaging in a pattern of corrupt activity. The judge sentenced Silverman to an aggregate term of 18 years in prison.

In his habeas corpus petition, Silverman argued that the evidence against him was constitutionally insufficient to sustain his convictions; he was denied a fair trial due to admission of lay opinion testimony; he was denied the effective assistance of counsel; the trial court improperly denied his request for a continuance so that he could obtain a new attorney; his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004),

the Ex Post Facto Clause and the Eighth Amendment; and the trial court unconstitutionally denied him judicial release.

In 83 pages, petitioner objects to all of the Magistrate Judge's recommendations. He again raises all of the same arguments he previously presented. Specifically, petitioner argues at length that the evidence was constitutionally insufficient to sustain his convictions. He contends that he fairly presented evidentiary issues raised in claim two of his habeas corpus petition to the state courts by arguing that the evidence was constitutionally insufficient to sustain his convictions, *Objections*, at 49, and further argues that such claims warrant federal habeas corpus relief. He objects to the Magistrate Judge's conclusion that he assumed his own defense midway through trial, *id.*, at 58,[1] and asserts that the state appellate court's rejection of his claim of ineffective assistance of counsel was contrary to, or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. §2254(d). Petitioner contends that he preserved for federal habeas corpus review his claim that the trial court improperly denied him a continuance to obtain new counsel by raising such claim in his motion for a new trial and on direct appeal and similarly asserts that such claim warrants relief. He again argues that the Ohio's reliance on *res judicata* to foreclose review of his claim that his sentence violated the Equal Protection Clause was

---

[1] This was the factual finding of the state appellate court, *see State v. Silverman*, 2007 WL 4260153 (Ohio App. 10th dist. July 27, 2006), and is presumed to be correct. 28 U.S.C. §2254(e).

misplaced. Finally, petitioner objects to the Magistrate Judge's recommendation that his claim under *Blakely v. Washington*, 542 U.S. 2906 (2004), and the Ex Post Facto Clause be dismissed as lacking merit.

The uncontroverted evidence at trial was that monies Silverman collected from third parties and held in trust for his clients were in the custody and control of Perry R. Silverman Co., L.P.A. but were never delivered to the clients. Silverman maintained at trial that he did not steal the money from his clients and suggested that his employees did. The Report and Recommendation accurately summarizes the evidence against Silverman, then sets out the evidence supporting the trial judge's finding that Silverman's defense did not create a reasonable doubt of his guilt:

> In a carefully written decision, Judge Richard A. Frye explained in a detailed, 37-page opinion why he credited the testimony of Bruce Gurwin and Heather Rodgers and rejected the defense theory that they embezzled the money from Perry R. Silverman Co., L.P.A. Boiled down, the judge's reasoning was that no credible evidence supported the assertion that Gurwin and Rodgers embezzled money and that Silverman's conduct was plainly inconsistent with the assertion that he was a victim of these disloyal employees.
> Both Gurwin and Rodgers testified that their duties were concentrated on Silverman's collection practice. Gurwin was the director of the collection operation. As such, he occasionally deposited monies into the collection trust account and often wrote checks to collection clients on that account. At Silverman's direction, he wrote checks on the collection trust account to pay the firm for legal fees incurred in collections and gave the check to Silverman. (Tr. 387, 389, 408-09 and 423-24.) Gurwin testified that he never wrote a check on the IOLTA trust account and that he wrote only one or two small checks for office supplies on the firm's operating account. (Tr. 389 and 401.) Gurwin never reconciled bank statements. (Tr. 401.) He did not handle deposits of checks payable in trust to personal injury clients. (Tr. 249-30.) Gurwin never reconciled bank accounts for the firm. (R. 401.)
> Gurwin testified that he had no knowledge of the IOLTA trust account. (Tr. 438.) When clients called about checks bouncing or delays

in receiving monies due and owing from the firm, Gurwin advised Silverman, who said he would take care of the matter. (Tr. 402-05, 426 and 438.)

Bruce Gurwin denied ever signing Silverman's name on a check, and he denied ever stealing any money from Silverman or his firm. (Tr. 432 and 451.) The first time he learned that Silverman was accusing him of theft was after the criminal trial began. (Tr. 452.)

Heather Rodgers is a paralegal who did collection work on the direction of Silverman and Gurwin. She testified that Silverman did the banking and reconciled bank statements. (R. 305.) The only banking Rodgers did was to very occasionally make deposits of collections. Silverman normally took the collections deposits to the bank. (R. 306.) He usually went to the bank every day. (R. 309.) Rodgers had no knowledge of the banking practices for the personal injury side of the practice. She did see Silverman physically handle bank statements. She further testified that if bank statements came in the mail, Silverman took them. (R. 306-07.) Rodgers frequently saw Silverman with a ledger book. (R. 307-08.) She had also seen him using Microsoft Money to reconcile personal injury bank accounts. (R. 308.)

In 2002-2003, Rodgers took complaints from clients about checks from the firm bouncing or about not receiving checks from the firm. (R. 310-11.) She relayed these complaints to Silverman. (R. 311.) When Rodgers asked Silverman about the money problems, he said that he was getting a loan and everything was fine. *Id.*

Rodgers' only contact with the IOLTA trust account was in 2003, when she wrote a check at Silverman's direction to a client who had threatened to go to the Bar Association. Silverman was out of the office, and he wanted her to get the check ready and to give it to the client when she came to the office. (R. 318-19.)

Rodgers never wrote any checks in the *Queen Alazar Estate* case. In March 2004, when she was helping clean out Silverman's office for the firm's move to Rick Brunner's office, so that he could oversee Silverman's practice while the lawyer disciplinary proceedings were pending in the Supreme Court of Ohio (Tr. 973-74), Rodgers found a briefcase that "was quite full of statement to clients with their checks inside that had never been mailed." (Tr. 327-28.) Most were statements to collection clients. (Tr. 328.) She gave them to Silverman's wife, who said she would take care of them. (Tr. 329.) While at the Brunner firm, Rodgers came "across a bunch of files where money had been missing and I brought those to Rick Brunner's attention, and that was the last I heard of it." (R. 327.)

. . .

Judge Frye found that the most telling evidence of Silverman's criminal intent was how he handled the *Queen Alazar Estate*. Queen

4

Alazar was driving to work when a drunk driver fleeing police struck her car causing her death. She was survived by a 13 year old daughter, Fatima Mosley. Her ex-husband, Michael Mosley was appointed executor of Ms. Alazar's estate. Judge Richard A. Frye's July 15, 2005 Decision, at pp. 4-5, doc. 17-4. Silverman settled two claims brought by the Estate. First, the Village of Powell paid $800,000 in settlement. A November 3, 2000 check in the amount of $700,000 and payable to Michael Mosley, Administrator of the Estate of Queen Alazar & Attorney Perry R. Silverman, was mailed to Silverman's law office. On November 10, 2000, it was deposited into Silverman's IOLTA trust account. The remaining $100,000 was transferred directly to GE Capital for an annuity for Fatima Mosley.

John Waddy represented some family members. A check for $133,352, his share of the attorney fees from the settlement, was mailed November 15, 2000 to John Waddy. A series of smaller checks to the family members represented by Waddy were issued from the Silverman IOLTA trust account and sent to Waddy, who distributed the checks to his clients. Silverman drew a $40,000 check payable to Michael Mosley and delivered it to him. No accounting of these distributions was made to the Probate Court.

Silverman was entitled to a fee of $133,352. No check in that amount was written on the IOLTA trust account to Silverman. But between November 10, 2000 and January 31, 2001, Silverman wrote 18 checks referencing the *Alazar Estate* settlement totaling $207,000 to Silverman Co., L.P.A. *Id.*, at pp. 5-6.

The second settlement was for an uninsured motorist claim against Queen Alazar's insurer. On January 17, 2002, State Farm wrote a check in the amount of $100,000 settling the claim. It was deposited that same date in Silverman's IOLTA trust account. Silverman did not inform Waddy, Mosley or the Probate Court of the settlement. *Id.*, at pp. 6-7.

Judge Frye concluded that Silverman, not one of his employees negotiated the $100,000 check to cover an overdraft of about $9,500 on the IOLTA trust account. *Id.*, at p. 7.

When the Probate Court discovered the report of distribution for the *Alazar Estate* due in December 2000 had not been filed, a hearing was noticed for August 14, 2003. Silverman told Mosley he did not have to appear at the hearing because he would file an updated report of distribution before then. The hearing was rescheduled for August 28 when Silverman did not timely file an updated report of distribution. *Id.*, at p. 8.

At no time before the hearing did Silverman advise his client or Waddy that he suspected that his employees had hid Silverman Co., L.P.A. office files and possibly take substantial sums due and owing the

5

> Estate. At the hearing, Silverman suggested to Judge Belskis that was what had happened. *Id.* Despite supposedly suspecting employee dishonesty, Silverman continued to employ Gurwin and Rodgers. Knowing that large sums were missing from the Estate, Silverman did not audit the IOLTA trust account and firm bank records to determine how much was missing and what likely happened to the money. He made no effort to recover monies for his clients. *Id.*, at pp. 9-11.
>
> Silverman advances no explanation for how the $100,000 State Farm uninsured motorist settlement check was deposited in the firm's IOALTA trust account, but he told no one about the settlement. Indeed, in a December 2002 status letter to the Probate Court, Silverman referred to the State Farm claim but failed to report the settlement. *Id.*, at p. 10.
>
> In a careful analysis, Judge Frye rejected Silverman's argument that there was reasonable doubt because Gurwin and/or Rodgers may have embezzled the money from the firm. *Id.*, at pp. 13-16. At base, Silverman "did not act as an innocent lawyer would be expected to have responded." *Id.*, at p. 15. That finding is fully supported by the record. The Magistrate Judge concludes that when viewing all of the evidence in the light most favorable to the prosecution, *Jackson v. Virginia, supra*, it was constitution-ally sufficient to sustain petitioner's convictions.

June 12, 2009 Report and Recommendation, pp. 45-48 and 50-53, Doc. 22.

Pursuant to 28 U.S.C. §636(b), this Court has conducted a de novo review of the entire record. For reasons detailed by the state appellate court and in the Magistrate Judge's *Report and Recommendation*, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the evidence was constitutionally sufficient to sustain petitioner's convictions. The detailed fact findings set out in the Ohio Court of Appeals' decision, which are set out at pages 32-43 of the Report and Recommendation, demonstrate that each conviction was supported by constitutionally sufficient evidence. Those findings are presumed correct. 28 U.S.C. § 2254(e). They are binding on this Court. 28 U.S.C. § 2254(d). The record fails to reflect that the state appellate court's

rejection of any of petitioner's claims on the merits was unreasonable so as to warrant federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Further, for the reasons set out in the Magistrate Judge's Report and Recommendation, this Court agrees that petitioner has failed to establish cause and prejudice for the procedural default of claims portions of claims two, three, four, and five.

Therefore, petitioner's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED.**

**IT IS SO ORDERED**.

\s\ George C. Smith

GEORGE C. SMITH
United States District Judge